# PRYOR CASHMAN LLP

7 Times Square, New York, NY 10036-6569  Tel: 212-421-4100  Fax: 212-326-0806

ORIGINAL



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/20/13

Donald S. Zakarin
Partner

Direct Tel: 212-326-0108
Direct Fax: 212-798-6306
dzakarin@pryorcashman.com

www.pryorcashman.com

New York   Los Angeles

## MEMO ENDORSED

December 20, 2013

VIA ECF
Honorable Louis L. Stanton
United States District Court - SDNY
500 Pearl Street
New York, NY 10007

Re: *Broadcast Music, Inc. v. Pandora Media, Inc.*, C.A. No. 13-CIV-4037 (LLS)

Dear Judge Stanton:

We write on behalf of intervenors Sony/ATV Music Publishing LLC ("SATV") and EMI Music Publishing ("EMI") in brief response to the letter from Kenneth Steinthal, counsel for Pandora Media, Inc. dated December 19, 2013.

Pandora's letter to the Court seeking a "clarification" of the Court's December 18 decision is simply a thinly veiled motion for reconsideration.

Pandora's letter professes that it seeks to have this Court "clarify" that when it denied Pandora's motion, it was not actually denying the motion that Pandora made, but only denying some portion of it. Pandora wants the Court to "clarify" that despite the fact that it denied Pandora's motion, it actually granted that aspect of Pandora's motion in which it claimed that its request for a license somehow automatically became an actual so-called "consent decree license in effect" which includes the compositions that were withdrawn from BMI by the copyright owners.

Pandora tries to invoke its "agreement" with BMI on interim fees to be paid for calendar year 2013 pending this Court's determination in the rate proceeding. But Pandora omits mention that its "agreement" with BMI did not include the compositions of Sony/ATV and EMI because it had entered into direct licenses with them following their withdrawal of New Media rights from BMI. Pandora's argument also studiously ignores Article XIV(B), which makes clear that an application for a license is not a license. Article XIV(B) provides a procedure whereby, pending completion of the proceedings provided for in Article XIV(A) either an applicant or BMI may apply to the Court, on an expedited basis, for an interim fee. If, and only if, such a proceeding is invoked, the Court shall fix an interim fee and BMI would then be required to issue an interim license. If Pandora failed to accept such interim license, its application for a license under Article XIV(A) would then be dismissed.

# ■ PRYOR CASHMAN LLP

Hon. Louis L. Stanton
December 20 2013
Page 2

The procedures of Article XIV(B) thus convert an application for a license into a process by which BMI may be required to offer an interim license with an interim fee set by the Court. By this procedure, an application only becomes an actual interim license if the applicant accepts the Court's interim fee determination and the interim license offered. None of this occurred and Pandora therefore has neither an interim license nor a supposed "consent decree license in effect."

To be clear, Pandora wants this Court, in the guise of supposedly clarifying its decision, to effectively withdraw its Opinion and Order that the compositions subject to the New Media withdrawals "are no longer eligible for inclusion in BMI's repertory" and "*BMI can no longer license them to Pandora* or any other applicant" (Opinion at 2) and instead say that Pandora's request for a license – no license has been issued – is transformed into a license despite the fact that the compositions of withdrawing publishers are outside BMI's repertory.

As this Court is aware and as Pandora is most assuredly aware, Pandora's motion for summary judgment included its "consent decree license in effect" argument. While Pandora devoted considerable attention to trying to persuade this Court to adopt Judge Cote's decision precluding limited withdrawals, the motion for summary judgment that this Court denied included Pandora's "consent decree license in effect" argument.

Pandora's supposed "consent decree license in effect" argument was a central subject of its motion for summary judgment. See, e.g., Memorandum in Support of Pandora's Motion for Partial Summary Judgment at 13 (arguing that because "Pandora requested a blanket license to perform 'all' the compositions in BMI's repertory; Pandora accordingly is authorized to publicly perform all the compositions in BMI's repertory while this Court reaches a determination regarding a reasonable fee for the blanket license"); id. at n. 10 (arguing that if the publishers could withdraw rights after Pandora applied for its "Consent Decree License" it would have the effect of "'pull[ing] the rug out' from under BMI's consent decree license"). Pandora devoted an entire section of its moving brief to the argument that the publishers' withdrawals should not apply to Pandora's so-called "consent decree license." See id. at Point V, pp. 24-25 (titled "Permitting the 'Withdrawals' to Affect Pandora's Consent Decree License Conflicts with the BMI Decree's Grant of Rate-Setting Jurisdiction to This Court"). Pandora devoted another whole section of its brief to arguing that the Court should not grant the remedy that it granted – that works that are the subject of partial withdrawals are no longer in BMI's repertory and cannot be licensed by BMI for any purpose – because granting such a remedy would "inequitably harm Pandora." Id. at 23-24.

Mr. Steinthal's letter proceeds as if Pandora had not made each of the foregoing arguments. It assumes that the Court's denial of its motion somehow overlooked its arguments in this regard. Nothing was overlooked. The Court simply rejected Pandora's arguments and denied its motion.

**PRYOR CASHMAN LLP**

Hon. Louis L. Stanton
December 20 2013
Page 3

# MEMO ENDORSED

    Moreover, there is no such thing as a "consent decree license in effect." Pandora made a request for a license. No license was issued. BMI, not Pandora, then invoked the jurisdiction of this Court. There remains an application for a license pending but, consistent with this Court' decision, that application can only apply to compositions within BMI's repertory and the compositions of Sony/ATV and EMI are not within BMI's repertory.

    This Court, after extensive briefing and after extensive oral arguments, denied Pandora's motion with full knowledge of the facts and after full consideration of every argument made by the parties. The parties and intervenors, to the extent that they disagree with this Court's decision and/or Judge Cote's decision, have a right of appeal. But Pandora should not be permitted to pretend it is seeking clarification when it is really asking this Court to render a different decision.

                                            Respectfully submitted,

                                            Donald S. Zakarin

cc: All counsel

MEMORANDUM ENDORSEMENT

<u>Broadcast Music, Inc. v. Pandora</u>
13 Civ. 4037 (LLS)

An application for a license, even though under Article XIV(A) it allows the applicant to perform the compositions in BMI's repertory during the interim until the applicant receives a license with an agreed or court-determined reasonable fee, is not itself a license. Applications do not vest rights. Even an "interim license" is not issued until after an interim fee is fixed. Art. XIV(B).

The blanket license ultimately granted will not include the right to play compositions denied to Pandora. Therefore, the "reasonable fee" for that license, based on the reduced repertory, will be smaller and when applied retroactively, necessarily insufficient to compensate BMI for the applicant's performances of those compositions during the interim. That would not serve, but frustrate, Article XIV(A)'s concept of fair retroactive compensation.

Therefore, unlike those who hold previously-executed licenses, an applicant for a license may not perform compositions denied Pandora and hence no longer in BMI's repertory.

So ordered.

Dated: New York, New York
December 20, 2013

_____
LOUIS L. STANTON
U.S.D.J.