# KING & SPALDING

King & Spalding LLP
101 Second Street
Suite 2300
San Francisco, CA 94105
Tel: +1 415 318 1200
Fax: +1 415 318 1300
www.kslaw.com

Joseph R. Wetzel
Direct Dial: +1 415 318 1263
Direct Fax: +1 415 318 1300
jwetzel@kslaw.com

October 6, 2013

**VIA ECF**

Hon. Louis L. Stanton, United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Broadcast Music, Inc. v. Pandora Media, Inc.*, No. 13-CIV-4037 (LLS)

Dear Judge Stanton:

      I write on behalf of Pandora Media, Inc. in response to BMI's October 2, 2014 letter requesting a pre-motion conference in connection with its request to modify the Protective Order to allow two employees of BMI, David Levin and Michael Steinberg, to review information designated as RESTRICTED under the Protective Order. The Court should deny the relief sought by BMI, which admittedly bears no relationship to BMI's preparation of its case in this litigation. However, Pandora joins in BMI's request for a pre-motion conference for reasons described at the end of this letter.

**I.    The Plain Language of the Protective Order Entitles Mr. Harrison To View RESTRICTED Materials**

      The express language of the Protective Order provides no support for BMI's position. Accordingly, BMI resorts to arguing that the Protective Order reflects BMI's unexpressed intention to shield RESTRICTED materials from certain Pandora attorneys assisting in this litigation. But it is black-letter law that the unexpressed or subjective intentions of a party to an agreement (in this case, a stipulated protective order) cannot vary the plain terms of that agreement. *Prop. Asset Mgmt., Inc. v. Chi. Title Ins. Co.*, 173 F.3d 84, 87 (2d Cir. 1999).

      Indeed, a similar limitation to the one BMI seeks to write into the Protective Order (i.e., precluding certain license negotiators from seeing RESTRICTED material) appears elsewhere in the Protective Order, but that provision applies only to third-party consultants who are also employed by publishers. *See* Protective Order, ¶ 21 [Dkt. No. 93]. Thus BMI knew how to draft the language it now asks the Court to read into the Protective Order. But it did not. And, to be clear, Pandora never would have agreed to such a limitation given Mr. Harrison's role in providing counsel in connection with this litigation and in the ASCAP proceeding.

October 6, 2013
Page 2

    Allowing in-house counsel like Mr. Harrison to view RESTRICTED material does not, as BMI suggests, collapse the difference between the CONFIDENTIAL and RESTRICTED designations. The Protective Order requires that an individual allowed access to RESTRICTED materials be (1) one of four designated in-house counsel and (2) "assisting in the litigation." CONFIDENTIAL materials can be viewed by a much wider audience, including non-attorney employees of the Receiving Party. These expressed limitations act as a mechanism to weigh the practical need for the parties to stay informed about the litigation and to make decisions to guide outside counsel against the unnecessary dissemination of highly confidential information.

## II.    BMI's Purported Surprise To Learn of Mr. Harrison's Role Is Not Credible

    BMI is unreasonable to suggest that it was surprised to learn of Mr. Harrison's access to RESTRICTED materials. Mr. Harrison meets the requirements for access to RESTRICTED materials. He is one of two attorneys at Pandora assisting with the preparation of Pandora's case in this proceeding. He attended the summary-judgment hearing on December 18, 2013 on behalf of Pandora and attended at least one deposition taken in this case. *See* O'Neill Tr. (noting attendance of "Christopher S. Harrison, Esq."). BMI permitted Mr. Harrison to remain in the deposition during discussion of RESTRICTED materials and only asked him to leave when OUTSIDE COUNSEL ONLY materials were discussed. *See id.* at 179. BMI inside and outside counsel also observed Mr. Harrison sitting at counsel table nearly every day during the ASCAP trial in January and February 2014. Under these circumstances, no reasonable individual could claim surprise at Mr. Harrison's involvement in this litigation.

    Nor can BMI reasonably claim surprise to learn of Mr. Harrison's role as a license negotiator. As of January 2014—months before entry of the operative protective order—BMI was in possession of Pandora's document production from the ASCAP case, which included documents reflecting Mr. Harrison's 2013 negotiations with certain major publishers. Those negotiations and documents were the subject of extensive testimony at the ASCAP trial attended by BMI counsel. For purposes of BMI's claim, the following example is illustrative:

    Q. Mr. Harrison is in-house counsel of Pandora, yes?
    A. He is.
    Q. Was he involved in the discussions with Universal?
    A. He was.

ASCAP Trial Tr. at 1160:19-22.

    BMI's claim that Mr. Harrison admitted in his deposition to no longer serving as Pandora's in-house counsel is flat-out wrong. Mr. Harrison testified that, while he reports to Pandora's CFO, he still provides legal counsel for Pandora. Exhibit A to BMI's letter is clear on this point:

    Q: Are you still a registered in-house counsel sponsored by Pandora?
    A.  Yes.
    Q. And do you provide any attorney services to Pandora in your new role in 2014?
    A.  Yes.

October 6, 2013
Page 3

(Harrison Tr. 17:15-20.) Mr. Harrison testified that he was not Pandora's acting *general* counsel, not that he no longer acted as counsel for Pandora.[1]

### III.  BMI Has Not Identified Any Harm Warranting Modification of the Protective Order

BMI has not identified any actual harm flowing from Mr. Harrison's access to RESTRICTED materials and certainly makes no claim that its motion concerns the preparation of its case in this proceeding. Instead, BMI posits an informational imbalance that hypothetically could affect future negotiations between Pandora and BMI. BMI does not identify any particular documents or categories of documents that form the basis for its concern, let alone that Mr. Harrison saw. And BMI omits that no meaningful negotiations have occurred between Pandora and BMI since BMI filed its petition.

BMI has been afforded adequate protection for its competitively sensitive documents throughout the proceeding. BMI asserted the attorney-client privilege and the work-product doctrine to protect many internal documents concerning "negotiations with Pandora." And BMI has employed the OUTSIDE COUNSEL ONLY designation under the protective order to shield non-privileged documents from Pandora's in-house counsel. Even if BMI could establish any impropriety or harm, its proposed remedy is unreasonable. BMI effectively argues that two "wrongs" make a right. BMI's letter is predicated on the premise that employees acting in a business role should not see RESTRICTED documents, yet BMI's proposed recompense is to give two more of its employees—both of whom are in business roles—access to Pandora's RESTRICTED documents. In the case of in-house counsel like Mr. Harrison, the interests of confidentiality are trumped by the need for access to certain RESTRICTED documents in order to manage this litigation and oversee outside counsel. There is no similar justification for Messrs. Levin and Steinberg, particularly at this stage of the litigation.[2]

Pandora plans to submit a letter to the Court requesting a pre-motion conference to address two separate issues once it has completed the meet-and-confer process with BMI. Pandora accordingly requests that the Court set a conference Thursday or Friday of this week so that all of the contemplated motions can be discussed at the same time.

Respectfully submitted,

*/s/ Joseph R. Wetzel*
Joseph R. Wetzel

---

[1] BMI also suggests that Pandora withheld the identification of its four designees under Paragraph 14 of the Protective Order. But there is absolutely no requirement for such a disclosure.

[2] BMI has aggressively pursued expanded access to Pandora's highly sensitive information. For example, BMI recently argued that it could treat the extremely sensitive July 2014 Pandora – BMG license as "public information," because the existence of the deal was announced in the press. Pandora is puzzled how such an announcement would render the confidential terms of the agreement public and has grave concerns about BMI's desire to show this and other documents regarding negotiations with BMI's ostensible competitors to broader audiences than are entitled to view them under the existing Protective Order.