USDC
DOCUMEN·
ELECTR·  ·\·  ·L·  ·   ·D
D·C # _____
DATE F.LED: 11/7/14

# KING & SPALDING

King & Spalding LLP
101 Second Street
Suite 2300
San Francisco, CA 94105
Tel: +1 415 318 1200
Fax: +1 415 318 1300
www.kslaw.com

Kenneth Steinthal
Partner
Direct Dial: +1 415 318 1211
Direct Fax: +1 415 318 1300
ksteinthal@kslaw.com

October 14, 2014

To The Clerk of The Court:
Please docket and place
this document in the public file.

/s/ Louis L. Stanton
Louis L. Stanton
U.S.D.J.
11/6/14

**VIA HAND DELIVERY**

Hon. Louis L. Stanton, United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RECEIVED IN CHAMBERS OF LOUIS L. S·  ·  ·N    OCT 15 2014    UNITED STATES D·  ·  JUDGE

Re:   *Broadcast Music, Inc. v. Pandora Media, Inc.*, No. 13-CIV-4037 (LLS)

Dear Judge Stanton:

On October 6, we wrote to the Court on behalf of Pandora Media, Inc., to join BMI's request for a pre-motion conference to address BMI's request to modify the Protective Order. We also indicated that we likely would be submitting an additional letter requesting a pre-motion conference on one or more additional matters. The meet and confer process has been unsuccessful, and Pandora respectfully requests that your Honor convene a conference at your earliest convenience. The conference would address Pandora's intention to move for partial summary judgment regarding the scope and term of the license at issue as well as BMI's request to modify the Protective Order. Pandora requests leave to file this letter under seal.

**A.    There is No Issue of Fact That Pandora is Licensed At Least Through 2016.**

Pandora intends to move for summary judgment that it is licensed to perform all the works in BMI's repertory through at least December 31, 2016. No one disputes that Pandora is entitled to a license through that date. Pandora applied for a license to perform all the works in BMI's repertory through December 31, 2017, and BMI in its expert disclosures has proposed a fee for that license through the end of 2016. Although the parties dispute the proper rate for the license, there is no issue of material fact about whether Pandora is entitled to the license itself. This Court should grant partial summary judgment on that narrow issue, leaving for trial only the issue of the appropriate fee for Pandora's license.

The Court should also determine that Pandora's BMI license extends through the end of 2017. Pandora's application specified a five-year license term, and the consent decree provides that Pandora is entitled to the license it requested. *See* BMI Decree § XIV(A) (entitling the applicant to the "license [it] requested"). BMI's refusal to quote a fee for the fifth year of the license requested is perplexing, but that oversight should not trump the decree's plain language.

**B.    Summary Judgment is Necessary to Protect the Parties' and the Court's Investment in this Proceeding.**

As this Court knows, the large publishers' recent, unprecedented withdrawal of millions

of compositions en masse from the performance rights organizations generated turbulent upheaval in the market. For the first time, it matters precisely *when* a licensee is deemed to have a license, as PRO repertoires no longer remain essentially intact during the time from a licensee's application to when a final rate is determined.

In the sixteen months since BMI brought this proceeding, BMI affiliates—Universal Music Publishing Group ("UMPG"), Sony/ATV and EMI Music Publishing ("Sony-EMI"), and BMG-Chrysalis ("BMG")—have: (1) attempted to partially withdraw new-media rights from BMI; (2) opted to withdraw completely from BMI in late December 2013; (3) used their withdrawals to leverage negotiations with Pandora over direct licenses; and (4) arranged with BMI to suspend their withdrawals, in some cases retroactively. These circumstances allowed UMPG and Sony-EMI to extort Pandora in a lopsided "game of chicken," as BMI's counsel put it. Pandora faced crippling statutory infringement damages, while the publishers were secure in their ability to seamlessly rejoin BMI without any risk to their larger businesses. Unequivocally, however, the works of all the major publishers are "in" the BMI repertory today, as they have been during discovery and the exchange of expert reports in this proceeding.

As we approach the end of 2014, history threatens to repeat itself. Certain large BMI publishers threaten to simultaneously withdraw millions of compositions from BMI for the second time in a year.[1] BMI's position appears to be that Pandora does not currently have a "license in effect" covering BMI's entire existing repertory, and that the scope of Pandora's BMI license can be vitiated between now and the end of these proceedings after trial.

Large-scale defections from BMI on the eve of trial would render the parties' cases obsolete. The parties have engaged in prolonged and expensive discovery in preparation for a proceeding to set the fee for Pandora's BMI license. Both sides' experts have proposed an adjustable-fee blanket license ("AFBL") with a headline rate based on a "full" BMI repertory as it stands today with all major publishers as affiliates. If the scope of the license at issue could be eviscerated as BMI posits, the parties and the Court would need to start from scratch to properly determine a reasonable fee for what could be a materially different repertory, both in number and quality of compositions. BMI's position that Pandora must wait until after trial to find out what repertory is within the scope of its license would make a mockery of the rate-court process.

### C.    Pandora's Position in Consistent with the Text of the BMI Decree.

The ruling Pandora seeks is entirely consistent with the text of the BMI consent decree. Nowhere does the BMI decree leave for trial the issue of Pandora's entitlement to a final license. The decree requires BMI, within ninety days "of its receipt of a written application from an applicant for a license," to "advise the applicant in writing of the fee which it deems reasonable for the license requested." BMI Decree § XIV(A). If the parties dispute the appropriate fee, either one may petition this Court to set a rate for the license the music user requested. *Id.* Details of the rate-court procedure aside, the significant point is that this Court need not determine the

---

[1] *See, e.g.*, Sony/ATV's Martin Bandier Repeats Warning to ASCAP, BMI, Billboard, *available at* http://www.billboard.com/biz/articles/news/publishing/6157469/sonyatvs-martin-bandier-repeats-warning-to-ascap-bmi.

user's entitlement to the license; the decree already guarantees such a license. The purpose of the rate court, as its name suggests, is to set a rate for the license to which the user indisputably has a right. The Court should grant the motion to protect the integrity of its rate-setting authority. To deny the motion would render the rate court provisions of the consent decree illusory.[2]

### D. Alternatively, the Court Should Grant Pandora an Interim License to Protect Against Potential Withdrawals While the Rate Court Proceeding is Pending.

If the Court does not grant Pandora's motion for partial summary judgment, Pandora requests that the Court convert this motion into a petition to set a written interim license under Article XIV(B) of the decree. Under Section XIV(B) of the BMI Consent Decree, "either the applicant or defendant may apply to this Court to fix an interim fee pending final determination of what constitutes a reasonable fee."

Last December, BMI represented to the Court that the parties were performing under a "negotiated [unsigned] interim license between BMI and Pandora." (ECF No. 79, at 1.) Although Pandora disputes that this unsigned document accurately reflects the parties' interim fee agreement, Pandora was surprised to learn during the meet and confer process that BMI now takes the position that Pandora has no interim license *at all* — given that Pandora has paid (and BMI has accepted) millions of dollars in interim license fees pursuant to the parties' *actual*, undocumented interim fee agreement. BMI's gamesmanship underscores Pandora's need, at a minimum, to have a written interim license in place before the end of the year.

The Court recognized in its December 18, 2013 Order and subsequent clarifications that interim licenses that were lawful when made should not be subject to withdrawals resulting from the Court's holding rendering BMI incapable of licensing a partially withdrawing affiliate's works to any applicant. That is consistent with the decree's purpose of protecting applicants and interim licensees from infringement risk during the rate-setting process. The same applies here. If the Court determines that partial summary judgment is inappropriate, the Court at a minimum should enter an order requiring BMI to immediately issue Pandora an adjustable fee interim license with a term through the end of these proceedings at a fee structured consistently with what Pandora has paid and BMI has accepted for the past year.

We respectfully request that the Court convene a conference at its earliest convenience.

---

[2] The absurd nature of BMI's position is revealed by the following: in its expert disclosures on August 22, BMI proposed to Pandora an AFBL through 2016 at 2.5% of Pandora's revenue. If Pandora accepted that proposal—inclusive of its huge 43% rate increase—this proceeding would be over and Pandora unquestionably would hold a final license having effect through 2016. Pandora should not have to choose between the scope of repertory it receives from BMI and its entitlement to a reasonable fee. Providing BMI such a leg up in this proceeding is antithetical to the purposes of the decree, which is designed to mitigate BMI's leverage and places the burden on BMI to justify the fee it proposes.

October 14, 2014
Page 4

                                    Respectfully submitted,

                                    */s/ Kenneth L. Steinthal*
                                    Kenneth L. Steinthal

cc:    All Counsel