**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BROADCAST MUSIC, INC.,

                Petitioner,

        v.

PANDORA MEDIA, INC.,

                Respondent.

Related to *United States v. Broadcast Music, Inc.*, 64 Civ. 3787 (LLS)

13 Civ. 4037 (LLS)

**ECF CASE**

**BROADCAST MUSIC, INC.'S MEMORANDUM OF LAW IN OPPOSITION
TO PANDORA'S MOTION TO ALTER OR AMEND THE JUDGMENT**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...........................................................................1

RELEVANT FACTUAL BACKGROUND ..........................................................2

LEGAL STANDARD ...........................................................................................4

ARGUMENT .........................................................................................................5

I.   PANDORA IS NOT LICENSED UNDER THE RMLC AGREEMENT ........................5

     A.   Pandora has requested and received a license from BMI that is not
         terminable based on Pandora's subsequent acquisition of KXMZ. .......................6

     B.   Pandora is not a radio station eligible for an RMLC license. ...............8

     C.   The grant of new media rights in the BMI-RMLC License does not cover
         Pandora's service. ........................................................................10

II.  PANDORA'S REQUEST FOR TIME TO NEGOTIATE A LONG-FORM
     LICENSE IS IMPROPER AND SHOULD BE DENIED ..............................................11

CONCLUSION.....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) ..................................................................................4, 12

*Banco Cent. Del Paraguay v. Paraguay Humanitarian Found., Inc.*,
  No. 01 CIV. 9649 (JFK), 2007 WL 2493684 (S.D.N.Y. Sept. 5, 2007) ..................................4

*In re Health Management Sys. Inc. Secs. Litig.*,
  113 F. Supp. 2d 613 (S.D.N.Y. 2000) ..................................................................4

*Montanile v. Nat'l Broad. Co.*,
  216 F. Supp. 2d 341 (S.D.N.Y. 2002) ..........................................................4, 7, 12

*Playboy Enterprises, Inc. v. Dumas*,
  960 F. Supp. 710 (S.D.N.Y. 1997) ........................................................................2

*In re SAIC, Inc. Sec. Litig.*,
  No. 12 CIV. 1353 DAB, 2014 WL 4953614 (S.D.N.Y. Sept. 30, 2014) ..................................5

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ..............................................................................7

**Other Authorities**

18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 ..........................7

Fed. R. Civ. P. 52(b) ..................................................................................5

Fed. R. Civ. P. 59 ...............................................................................*passim*

Fed. R. Civ. P. 60(c) ................................................................................5

Fed. R. Civ. P. 62 ...................................................................................12

S.D.N.Y. Civ. R. 6.3 ..................................................................................4

Broadcast Music, Inc. ("BMI") respectfully submits this memorandum in opposition to Pandora Media, Inc.'s ("Pandora") Motion to Alter or Amend the Judgment and the accompanying memorandum of law (the "Motion").

## PRELIMINARY STATEMENT

Pandora's Motion is simply an effort to prolong further an already extended litigation. Pandora asks for additional time to negotiate with BMI—about the right to terminate its litigated license based on its affiliate's purchase of a South Dakota radio station, and about "ancillary" license terms. Although known throughout, Pandora never sought to make either of these issues the subject of litigation.

This is an improper basis for modification under the Federal Rules of Civil Procedure (the "Rules"). Rule 59 allows a court to modify a final judgment or order that is plainly erroneous in light of new facts or circumstances. The rule is not a vehicle for putting new issues before the Court, or asking for time to negotiate. Pandora made a strategic decision not to raise the issues during trial; its effort to do so now should be denied. The judgment entered should remain final and Pandora should proceed with its appeal in the ordinary course.

**Pandora affiliate's purchase of KXMZ.** Pandora asserts that the Court's judgment should be altered or amended to accommodate its affiliate Pandora Radio LLC's recently completed purchase of KXMZ. Pandora claims that it "intends to negotiate with BMI over Pandora's status as a licensee under the RMLC license." (Motion at 3.) As BMI has already made plain, *see* Dkt. No. 238 at 9-10, there is nothing to negotiate. The RMLC agreement covers only commercial terrestrial broadcast radio stations, which this Court has already ruled Pandora is not. Pandora itself is not a licensee under the RMLC license and its performances via

its new media service are outside of the scope of the RMLC license covering KXMZ.[1]  Pandora

has also applied for and received a license through 2016.  Having pressed for a longer license

term at trial, Pandora cannot now seek to terminate the license in mid-2015.

**Long-form license.**  Pandora also argues that the Court should amend its decision

to define certain "ancillary license terms" that Pandora did not raise at trial.  This is an

inappropriate ground for a motion under Rule 59.  These terms, which include previously

unidentified issues such as "what constitutes Pandora's 'revenue,'" as well as issues concerning

"Pandora's payment schedule to BMI, any music use reporting requirements, [and] whether BMI

is entitled to audit Pandora's books and records," Motion at 2, could have been, but were not,

litigated by Pandora at trial.  The Court's final judgment need not resolve every conceivable

issue that could arise in negotiation of a final license, it need only set a reasonable rate.  BMI

typically negotiates and enters into long-form licenses after a rate is set by the Court.

The possibility that the parties may require a determination from the Court on

certain ancillary issues (consistent with this Court's continuing jurisdiction), should not suspend

Pandora's appeal or its payment of fees at the rate ordered by the Court.

## RELEVANT FACTUAL BACKGROUND

In August 2012, this Court approved an industry-wide settlement between the

Radio Music License Committee (the "RMLC") and BMI covering the period January 1, 2010

through December 31, 2016.[2]  The agreement resulted in two separate license agreements: (i) the

---

[1]      Pandora claims that it has not submitted "full briefing" regarding its status as a RMLC licensee but the time
has passed for it to file a Rule 59 motion and thus any new arguments that it may raise in its reply are waived.
*Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time
in a reply brief need not be considered by a court.") *aff'd*, 159 F.3d 1347 (2d Cir. 1998).  To the extent that Pandora
raises new arguments in its reply to this Opposition, or this Court permits Pandora to submit "full briefing," BMI
requests an opportunity to submit a sur-reply or "full" opposition, respectively, as appropriate.

[2]      Declaration of Eric I. Weiss in Support of Broadcast Music, Inc.'s Opposition to Pandora's Motion to Alter
or Amend the Judgment (the "Weiss Decl.") Ex. A at 6, 18.

BMI Radio Station Blanket/Per Program License Agreement (the "Radio Station License"); and (ii) the BMI 2010 Radio Group Transmissions License Agreement (the "Radio Group License" and, together with the Radio Station License, the "BMI-RMLC License"). The BMI-RMLC License covers "the over-the-air broadcasts, digital simultaneous broadcasts, and customized radio products of over 10,000 terrestrial broadcast radio stations" and calls for the payment of 1.7% of revenue. (Dkt. No. 242 (the "Opinion" or "Op.") at 45, 47.)

On June 11, 2013, Pandora announced its intent to purchase KXMZ, a small radio station in South Dakota. (The Parties' Agreed Findings of Fact ¶ 93.) Pandora's acquisition of KXMZ was subject to regulatory approval from the Federal Communications Commission (the "FCC"). (*Id.* ¶ 98.) On June 11, 2013, although no Pandora affiliate was yet the owner of KXMZ, Pandora Media, Inc. submitted to BMI partially executed copies of both the Radio Group License and Radio Station License. (Weiss Decl. Ex. B.) In its Motion, Pandora alleges that it submitted the signed Radio Group License "[i]n an abundance of caution," not because it believed that it was actually entitled to the Radio Group License. (Motion at 3.)

As this Court knows well, between February 10 and March 13, 2015, BMI and Pandora engaged in a five-week trial before Your Honor concerning the reasonableness of the terms and fees for the license Pandora had requested from BMI.[3] At no time before, during, or even after trial did Pandora assert that the license should be terminable, contingent, or cancellable upon its purchase of KXMZ, a transaction that was well underway and within Pandora's knowledge more than a year before trial.

---

[3]    On December 5, 2012, "Pandora applied for a license under the BMI Consent Decree commencing January 1, 2012." (Op. at 15.) On March 4, 2013, BMI responded to Pandora's application and quoted a license on substantially similar terms to those ultimately deemed reasonable by this Court. On June 13, 2013, after the parties' negotiations failed, BMI filed a Petition for the Determination of Reasonable License Fees (the "Petition"). (Dkt. No. 1 (the "Petition").)

By letter dated May 7, 2015, Pandora informed the Court that on May 4, 2015, the FCC had approved the acquisition of KXMZ by **Pandora Radio LLC**, a wholly-owned subsidiary of Pandora.  (Dkt. No. 237 at 3; *see also id.* Ex. B at 1.)  According to Pandora, Pandora Radio LLC completed its acquisition of KXMZ on June 9, 2015.  (Motion at 2.)

On June 26, 2015, the final day permitted under Rule 59, Pandora filed the instant Motion.  Not until July 6—four days before this brief was due—did Pandora ever seek to negotiate *any* of the issues raised in its Motion.  (Weiss Decl. Ex. C.)  In an email sent at 9 p.m. that day, Pandora raised only the issue of the long-form license.  (*Id.*)

## LEGAL STANDARD

"A motion to alter or amend a judgment pursuant to Rule 59 is evaluated under the same standard as a motion for reconsideration under Local Civil Rule 6.3."  *Banco Cent. Del Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 CIV. 9649 (JFK), 2007 WL 2493684, at *2 (S.D.N.Y. Sept. 5, 2007) (citation omitted).  "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"  *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (quoting *In re Health Management Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." (internal quotations and citation omitted)).  A motion under Rule 59(e) "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Tonga Partners*, 684 F.3d at 52 (internal quotations and citation omitted).

4

## ARGUMENT

### I.   PANDORA IS NOT LICENSED UNDER THE RMLC AGREEMENT

Pandora requested, litigated, and received a license from BMI for the performance of BMI-affiliated works on its service, in a proceeding in which Pandora relied on the BMI-RMLC License as a benchmark.  The Court considered fact and expert evidence on that issue and conclusively ruled that the RMLC rates are not applicable to Pandora.  (Op. at 54.)  Pandora nevertheless "moves to alter or amend the judgment to establish that Pandora is entitled to the terms of the RMLC license."  (Motion at 2.)  Pandora stops short of asking for an actual amendment to the judgment.  Instead, Pandora states that it "***intends*** to negotiate with BMI over Pandora's status as a licensee under the RMLC license."  (*Id.* at 3 (emphasis added).)  Only when Pandora sees fit, apparently, will it "seek this Court's leave to engage in full briefing on the grounds described" in its Motion.  (*Id.* at 3-4.)

Pandora's disregard for the Rules should not be countenanced.  The 28-day time limit set forth in Rule 59(e) is a strictly enforced requirement that cannot be met simply by asking for time to negotiate.[4]  The Rules contemplate that if any negotiations are to take place, they must happen within the 28-day period.  Pandora has had much longer than 28 days, however, having raised this issue with the Court on May 7, 2015—before the Court's judgment was issued.  (Dkt. No. 237.)  Although BMI responded with its position on May 12, 2015, *see* Dkt. No. 238, Pandora has done nothing but wait for the Court's judgment, and for its time to appeal to run, to take any action.  The Court should not sanction this behavior.

---

[4]       *See In re SAIC, Inc. Sec. Litig.,* No. 12 CIV. 1353 DAB, 2014 WL 4953614, at *2 n.5 (S.D.N.Y. Sept. 30, 2014) (refusing to consider a Rule 59(e) motion filed 32 days after the entry of judgment).  Rules 52 and 60 contain similar time limits, requiring motions to be filed "no later than 28 days after the entry of judgment" and "within a reasonable time," respectively.  Fed. R. Civ. P. 52(b); Fed. R. Civ. P. 60(c).  These Rules, like Rule 59, are designed to avoid undue delay and prejudice to the parties.

In any event, negotiations regarding KXMZ are unnecessary.  Pandora is not a
licensee under the BMI-RMLC License, and its digital music service transmissions are not
covered by that license.  Pandora's Motion to alter the judgment to address the purchase of
KXMZ by a separate, non-party entity (Pandora Radio LLC) should be denied for at least four
reasons:  (i) Pandora has requested and received a license from BMI without a right of
termination for its purchase of KXMZ; (ii) Pandora's pure play digital music service is not a
commercial radio station and is therefore not eligible for the BMI-RMLC License; (iii) only the
"New Media Transmissions" of KXMZ—which is now owned by Pandora Radio LLC—are
arguably covered by the BMI-RMLC License; and (iv) even if Pandora could be licensed under
the BMI-RMLC License, the license would not cover Pandora's online digital service.

### A.   Pandora has requested and received a license from BMI that is not terminable based on Pandora's subsequent acquisition of KXMZ.

By its Motion, Pandora asks the Court to "alter or amend the judgment to
establish that Pandora is entitled to the terms of the RMLC license."  (Motion at 2.)  But as a
result of the Court's Opinion, entered on May 28, 2015, and the judgment entered the following
day, Pandora *has a license* with BMI for the years 2013 through 2016 at a rate of 2.5% of
revenue.  (Op. at 60; Dkt. No. 243 (Clerk's Judgment).)  The BMI-Pandora license is the
culmination of nearly two years of litigation concerning a reasonable fee for a license that
*Pandora requested*.  (Op. at 14-15.)  To allow Pandora to ask for a new license now would be an
enormous waste of judicial resources.

Pandora's license, as ordered by this Court, does not include a termination right.
Pandora cannot use Rule 59 to alter or amend the Court's judgment to seek relief it could have
requested at any point during these now-concluded proceedings.  Rule 59 is an "extraordinary
remedy to be employed sparingly" and requires Pandora to demonstrate the "availability of new

evidence." *Montanile*, 216 F. Supp. 2d at 342 (internal quotes and citation omitted); *Virgin Atl. Airways*, 956 F.2d at 1255.[5]  Pandora has not identified any new evidence.  Its acquisition of KXMZ was pending throughout this litigation.

Although Pandora filed its Response to the Petition of Broadcast Music, Inc., for the Determination of Reasonable Fees (the "Response"), on July 19, 2013, a month after it announced its pending acquisition of KXMZ, Pandora did not seek a right of termination.  (*See* Dkt. No. 8 ¶¶ 19-20.)  On the contrary, Pandora's Response made clear that Pandora intended to litigate the purported relevance of the BMI-RMLC License rate in connection with its rate application to BMI.[6]  Pandora's pre-trial filings were silent on a right of termination and no oral request for such a right was made during trial.

Pandora did not seek an exit clause under its proposed license.  Just the opposite. Pandora sought to lock in the court-determined rate for a longer period, through 2017.  In Pandora's findings of fact, it argued that "[i]f a year of negotiation followed by nearly two years of litigation ultimately buys less than two years of prospective certainty and peace, applicants for BMI licenses will have little or no meaningful recourse to the rate court."[7]  Pandora reiterated its position in closing argument, stating that "too much has been invested in this proceeding for us to have to hit the reset button at the end of 2016."  (Weiss Decl. Ex. D at 2628:4-9, Mar. 13, 2015 (Pandora's closing argument).)  Pandora now seeks to hit the reset button in mid-2015.

---

[5]      "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790.)  Although Pandora does not reference Rule 59, or the grounds justifying reconsideration, in its discussion of the RMLC license, Pandora does not allege a change of controlling law, the need to correct a clear legal or factual error, or the prevention of manifest injustice.  *Id.*

[6]      Response ¶ 19, n.5 ("Pandora's Consent Decree License application remains in effect for the license period January 1, 2013, through December 31, 2017, pending this Court's final resolution of Pandora's status as a licensee under the BMI-RMLC Agreement.").

[7]      Pandora's Proposed Findings of Fact and Counter-Findings to Certain of BMI's Proposed Findings of Fact ¶ 635.

**B.      Pandora is not a radio station eligible for an RMLC license.**

Pandora argues that the acquisition by Pandora Radio LLC of a radio station in one of the country's smallest radio markets has magically transformed Pandora's more than $3 billion digital music service into a radio broadcaster eligible for a license the Court expressly has determined to be "not a useful benchmark for Pandora." (Op. at 48.) This argument should be rejected as contrary to both the terms of the BMI-RMLC License and its purpose.

**1.      Pandora Media, Inc. is excluded by the terms of the BMI-RMLC License.**

The BMI-RMLC License grants rights only to its "Licensees,"[8] which are defined in the agreement as "*commercial radio stations*." (Weiss Decl. Ex. A at 18 (emphasis added).) Pandora is not a commercial radio station and therefore cannot be a "licensee" under the BMI-RMLC License. Indeed, as this Court held previously, "*Pandora is not radio* and is not similarly situated to the other RMLC licensees." (Op. at 54 (emphasis added); *see also id.* at 47 (citing an internal Pandora email sent by former CEO Joseph Kennedy "expressing doubt that consumers would say Pandora was radio, [and instead stating] 'we're just Pandora.'")

The acquisition by a Pandora affiliate (Pandora Radio LLC) of a small radio station in South Dakota does not alter this conclusion. Pandora itself referred to the purchase of KXMZ as a sham and has made no secret of the fact that the primary purpose of the acquisition was to qualify for the BMI-RMLC License rate. (Weiss Decl. Ex. D at 915:20-916:2, Feb. 20, 2015 (Kennedy).)

The Radio Station License grants only a *licensee* the right to publicly perform BMI-affiliated works "by Radio Broadcasting and New Media Transmissions." (Weiss Decl.

---

[8]      Weiss Decl. Ex. A § 3(A) ("BMI grants LICENSEE a non-exclusive Through-to-the-Audience License to perform publicly in the U.S. Territory, by Radio Broadcasting and New Media Transmissions, non-dramatic performances of all musical works in the BMI Repertoire during the Term.")

Ex. A § 3(A).)  These "New Media Transmissions" include performances on a commercial broadcast station's website, which are primarily simulcasts of the station's terrestrial broadcast. (*Id.* § 2(L); Weiss Decl. Ex. D at 1624:16-1625:10, Mar. 2, 2015 (P. Cremieux).)

The license also includes an assignment provision that provides, in relevant part, that the license "shall be non-assignable except to the person, firm, or corporation *acquiring the Federal Communications Commission license of Station . . . .*"  (Weiss Decl. Ex. A § 10 (emphasis added).)  Although Pandora claims that it is "now the assignee of Connoisseur Media, LLC's 2012 Radio [Station] License Agreement for KXMZ," this is factually inaccurate. Pandora Radio LLC, a non-party to this litigation, is the entity that acquired KXMZ and was assigned its broadcast license by the FCC.  (*See* Dkt. 237, Ex. B at 1.)  Thus, Pandora Radio LLC is the assignee of KXMZ's BMI Radio Station License and only its "New Media Transmissions" can arguably be covered by the BMI-RMLC License.[9]  These arguably-licensed New Media Transmissions include internet simulcasts of KXMZ's terrestrial broadcast through the "listen live" feature on KXMZ's websites.  The Pandora service is not a New Media Transmission made by Pandora Radio LLC and is not covered.

## 2.    The unambiguous terms reflect the clear intent of the parties to BMI-RMLC License.

The uncontroverted trial evidence demonstrated that Pandora's service was not intended to be and was not included in the grant of rights by BMI to the RMLC.  As the Court heard during BMI's direct case, the BMI-RMLC License was negotiated as, and intended to be, a license for the broadcast radio industry.  New media rights were a "very small" factor in the negotiation of the license because revenue from new media sources represented "less than 2

---

[9]    The BMI-RMLC License does not provide for the assignment of BMI's grant of rights to a licensee's corporate parent or affiliates.

percent of the overall [broadcast radio] industry fees." (Weiss Decl. Ex. D at 184:18-185:2, Feb. 11, 2015 (O'Neill).)  Indeed, the fee for performances on iHeartRadio, which Pandora referenced repeatedly at trial, was negotiated as part of the BMI-RMLC License, but the fee was viewed as a *de minimis* part of a massive, industry-wide deal that is principally terrestrial.  (*Id.*)

BMI also made clear during its negotiations with the RMLC that a "pure play Internet radio streaming service of the kind that Pandora is" was not the subject of the negotiation.  (Weiss Decl. Ex. D at 444:20-445:10, Feb. 17, 2015 (Steinberg).)  This intention is reflected in this BMI-RMLC License itself, which clearly defines and confines the right to perform "New Media Transmissions" to cover only new media uses that are related to terrestrial stations' broadcasts.  (*See infra* Section I.C.)

C.   **The grant of new media rights in the BMI-RMLC License does not cover Pandora's service.**

Pandora's attempt to rely on the Radio Group License as the basis for its entitlement to the RMLC rate also fails.  Pandora's billions of performances are not within the grant of rights contained in the Radio Group License.  As Pandora itself concedes, this argument is not its strongest and was only advanced "[i]n an abundance of caution."  (Motion at 3.)  The BMI Radio Group License covers "New Media Transmissions made by the radio division of an entity that owns one or more terrestrial radio stations where such transmissions are not otherwise licensed by any Station licensed under the BMI-10 License."  (Weiss Decl. Ex. E § 2(A).)  As this Court held, the Pandora service "is not radio," *see* Op. at 54, nor is it a division of Pandora Radio LLC, the entity that owns KXMZ.  Thus, Pandora Media, Inc.'s New Media Transmissions cannot be covered by the Radio Group License.

Further, even if Pandora Media, Inc. were considered the "licensee" under either license, its performances would not be covered.  "New Media Transmissions" are defined as:

any performance transmitted via the Internet, wireless data networks, or any other similar transmission facilities, *where a commercial relationship exists between such performance and LICENSEE's Radio Broadcasting.* By way of example, a commercial relationship exists when: (1) there is in-common branding and marketing between LICENSEE's New Media Transmissions and LICENSEE's Radio Broadcasting; and/or (2) there are bundled sales of advertising availabilities and/or sponsorship across LICENSEE's Radio Broadcasting and LICENSEE's New Media Transmissions.

(Weiss Decl. Ex. A § 2(L) (emphasis added).) [10]  There is no evidence that Pandora and KXMZ engage in any "in-common branding and marketing" or "bundled sales of advertising" across their platforms.  That is, Pandora does not promote or market KXMZ to its national audience, nor does Pandora bundle advertising sales with KXMZ outside of the Rapid City, South Dakota market (assuming, *arguendo*, Pandora even does that).  The "commercial relationship" between Pandora and KXMZ therefore does not exist and fails to bring Pandora's service within the scope of the BMI-RMLC License.

## II.  PANDORA'S REQUEST FOR TIME TO NEGOTIATE A LONG-FORM LICENSE IS IMPROPER AND SHOULD BE DENIED

Pandora urges the Court to reopen its judgment to "permit the parties to discuss ancillary license terms" and further requests that this Court hold its motion in abeyance "pending the parties' submission of a consent judgment for the court's approval."  (Motion at 4.)  Pandora fails to mention that as of the date of its Motion, it had made no attempt to negotiate these ancillary license terms with BMI.  In any event, the negotiation of ancillary license terms—an issue never raised before or during trial—is not a ground for reconsideration under Rule 59.

As discussed *supra*, Rule 59 is an "extraordinary remedy to be employed sparingly" upon a showing by the movant that the Court has overlooked a controlling decision or

---

[10]     The definition of "New Media Transmissions" in the Radio Station License is incorporated by reference in the Radio Group License.  (Weiss Decl. Ex. E § 2.)

factual matter.  *See Montanile*, 216 F. Supp. 2d at 342; *Tonga Partners, L.P.*, 684 F.3d at 52.  The negotiation of ancillary license terms does not fit within that rubric.  Pandora does not suggest otherwise.  The ancillary license terms that Pandora says must be resolved by this Court, absent consent of the parties, include "what constitutes Pandora's 'revenue,' Pandora's payment schedule to BMI, any music use reporting requirements, [and] whether BMI is entitled to audit Pandora's books and records[.]"  (Motion at 2.)[11]

BMI's Digital Music Service license terms are in evidence in this case, and Pandora itself argued that the BMI website blanket license agreement should continue.  Pandora could have anticipated any purported issues with these terms as BMI's form licenses were in evidence during the trial.  (*See, e.g.*, Weiss Decl. Exs. F-H.)  Indeed, Pandora litigated the definition of the revenue base, arguing for a different deduction for ad agency commissions than in BMI's standard form.  Pandora's  proposal was rejected.  Pandora cannot use a Rule 59 motion to raise other issues it has with the revenue definition after it strategically chose not to raise these issues during the nearly two years of litigation.

In addition, Pandora points to no legal requirement—and there is none—that the parties must agree to terms of a long-form license before an appeal can be taken, or even a requirement that the parties agree to a long-form license before Pandora must make payments to BMI under the terms of the license ordered by the Court.[12]  The license details that Pandora has

---

[11]     Pandora adds that it may need to negotiate "the bond (if any) that Pandora should post during its appeal." (*Id.* at 2.)  The judgment entered by this Court is executable.  In the event Pandora would like a stay of the execution pending appeal, it must request one and post a bond, unless otherwise ordered by the Court.  *See* Fed. R. Civ. P. 62(b), (d).  There is no reason why Pandora should not be required to either pay BMI at the rate ordered by this court, or otherwise bond the amount pending any appeal.  BMI has already been prejudiced by receiving interim fees at a significantly less than reasonable rate from Pandora for over two and a half years, since January 1, 2013.  Further, even if the Court found that the BMI-RMLC rate was somehow applicable to Pandora, it would impact no more than the remaining year and a half of the license at issue.

[12]     Indeed, in the DMX and Music Choice litigations, this Court did not enter a long-form license prior to the appeals.

identified can be negotiated while an appeal is pending, and will have no impact on the

arguments the parties may present to the Second Circuit.[13]  The appeal of the Opinion need not

be held hostage to the process of finalizing the License.

    This is precisely the path Pandora and ASCAP followed.  Although ASCAP and

Pandora negotiated ancillary license terms after Judge Cote issued her Opinion and Order, it had

no impact on the timing of the appellate process, and did not require the filing of a Rule 59

motion.[14]  BMI is prepared to follow "a similar path here" and negotiate a long-form license with

Pandora while the appellate process proceeds.[15]

**CONCLUSION**

    For all of the foregoing reasons, Pandora's Motion should be denied.  The

judgment should remain final, Pandora should make payments to BMI consistent with the terms

of the judgment, and any appeal should proceed without further delay.

*[Remainder of page intentionally left blank]*

---

[13] Pandora does not allege that it anticipates the parties will have any unresolvable disputes concerning these license terms, nor does it allege that it intends to seek terms that are contrary to the standard terms for each of these items that BMI offers all digital music licensees.

[14] ASCAP filed its opening appellate brief on July 28, 2014, just three days after Judge Cote entered the consent judgment referred to in Pandora's Motion.  *Compare* Motion, Ex. A *with* Brief of Appellant American Society of Composers, Authors and Publishers, *Pandora Media, Inc. v. Am. Soc'y of Composers, Authors & Publishers*, Case No. 14-1158 (2d. Cir.), Dkt. No. 100.

[15] BMI proposes that any ancillary issues on which the parties cannot agree be presented to the Court at an appropriate time, and on an expedited basis.

13

Dated: July 10, 2015
New York, New York

MILBANK, TWEED, HADLEY & MCCLOY LLP


By:   /s/ *Atara Miller*              _
Scott A. Edelman
Linda Dakin-Grimm
Atara Miller
Rachel Penski Fissell

28 Liberty Street
New York, New York 10005
(212) 530-5039

-and-

Stuart Rosen
Joseph J. DiMona
Hope Lloyd

7 World Trade Center
250 Greenwich Street
New York, New York 10007

*Attorneys for Petitioner Broadcast Music, Inc.*